**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN THOMAS TROBAUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 2:18-cv-00053** |
| **v.** | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Brown** |
| | ) | |
| **ANDREW M. SAUL,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Pending before the court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), to which Defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 22). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 10),[2] and for the reasons given herein, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **GRANTED** and that the decision of the Commissioner be **REVERSED and REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

## I. PROCEDURAL HISTORY

Plaintiff, John Thomas Trobaugh, filed an application for Disability Insurance Benefits ("DIB") under Title II and an application for Supplemental Security Income ("SSI") under Title XVI

---

[1]Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

[2]Referenced hereinafter by page number(s) following the abbreviation "Tr."

of the Social Security Act on May 20, 2015, alleging disability onset as of April 1, 2014, due to back, shoulder, carpal tunnel, and diabetes. (Tr. 10, 68, 249, 254). Plaintiff's claim was denied at the initial level on September 15, 2015, and on reconsideration on December 10, 2015. (Tr. 10, 128, 138). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 10, 145). The ALJ heard the case on April 17, 2017, when Plaintiff appeared with counsel and gave testimony. (Tr. 10, 29-67). Testimony was also received by a vocational expert. (Tr. 64-66). At the conclusion of the hearing, the matter was taken under advisement until October 31, 2017, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 10-24). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since April 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right shoulder dysfunction, lumbar degenerative disc disease, bilateral carpal tunnel syndrome (CTS), diabetes mellitus, obesity, affective disorder, anxiety disorder, and alcohol abuse disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasional push, pull, and reach with his right upper extremity and he can only occasionally climb ladders, ropes, or scaffolds. Mentally, he can perform simple and detailed, 1-4 step tasks. Additionally, he can sustain occasional contact with supervisors, coworkers, and the public and he can adapt to gradual and infrequent changes in the work routine.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on June 6, 1972 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12, -13, 14-15, 22-23, 24).

On April 24, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

The medical record shows the claimant sought treatment for his right shoulder following his injury. Initially he reported pain and intermittent burning. However, on examination he had only mild tenderness with full range of motion, normal strength, and negative orthopedic signs. An x-ray of his shoulder was also negative

(Ex. 3F, p. 31). The claimant also had a magnetic resonance imaging (MRI) scan of his shoulder that showed his rotator cuff was intact and he had only mild acromioclavicular degeneration. However, the study also showed a superior labral abnormality with a lesion and paralabral cyst (Ex. 1F, p. 3). He started physical therapy but was discharged due to non-compliance (Ex. 4F, pp. 16-17). Subsequently, he met with an orthopedic surgeon who recommended surgery (Ex. 4F, p. 8).

In July 2014, the claimant had arthroscopic surgery on his right shoulder, including labral repair with decompression and debridement (Ex. 4F, p. 18). During his follow up examinations, he showed limited range of motion and residual weakness. However, his doctor also noted that he had not started physical therapy as advised. The doctor also noted that his lack of physical therapy was compromising his recovery (Ex. 4F, p. 10). When the claimant finally started physical therapy, he showed improvement (Ex. 4F, p. 11).

In February 2015, the claimant attended his last treatment appointment for his right shoulder. He continued to report residual pain and limited range of motion. However, he showed no joint instability and he had a negative O'Brien's test. The claimant's surgeon also released him to return to work but gave him a permanent lifting restriction of 35 pounds with only 15 pounds lifting overhead (Ex. 4F, p. 14). The claimant testified at the hearing that he has not returned to see his surgeon since February 2015, and he attributed this lack of treatment to financial difficulties (Hearing Testimony).

In July 2015, Thomas Dake, M.D., an independent consultant, examined the claimant. The claimant reported residual right shoulder pain, as well as lower back pain, chronic joint pain, bilateral wrist pain, and elevated blood sugars. However, on examination, Dr. Dake noted the claimant had good blood pressure, normal cardiovascular findings, and he admitted he had not taken his diabetes medication for several months. Dr. Dake also found the claimant had limited range of motion in his right shoulder but otherwise full range of motion in all extremities. Additionally, the claimant was missing reflexes, but he had a normal gait, his sensation was normal, and he had 5/5 motor strength throughout (Ex. 5F, pp. 1-4).

The claimant also started treatment for his back pain in November 2015. An x-ray of his back showed only mild spondylosis and loss of disc height at the L3-5 vertebra (Ex. 13F, p. 3). When he started physical therapy he had bilateral radiculopathy and mild weakness, but his therapist noted he had an excellent prognosis (Ex. 22F, pp. 1-3). The only additional back pain treatment that the claimant has received has been conservative medication management. He has not required any epidural steroid injections, emergency room visits, or surgical intervention (Hearing Testimony).

In January 2016, he had an MRI scan of his lumbar spine. That study showed disc degeneration at the L3-5 vertebra with a protrusion at the L4-5 level resulting in mild to moderate stenosis (Ex. 13F, p. 1).

In March 2016, the claimant reported worsening back pain to his primary care physician, but he also admitted he was not taking any medication. His doctor recommended medication and gave him a referral for a surgical consultant (Ex. 16F, p. 6). The surgeon noted some lumbar tenderness and decreased range of motion, but also found the claimant had normal sensation, negative straight leg raising, and 5/5 motor strength throughout. He concluded that there was nothing in the radiographic imaging to correlate to the claimant's subjective reports of pain. He also declined to recommend surgery and instead urged weight loss through diet and exercise (Ex. 2F, p. 1).

Finally, in September 2016, the claimant began treatment with Pushpendra Jain, M.D. Dr. Jain noted only minor complaints of diffuse joint pain but found no tenderness, with normal range of motion, motor strength, sensation, and gait (Ex. 14F, pp. 6-8). Furthermore, a computed tomography (CT) scan of the claimant's lumbar spine in November 2016 showed only mild degeneration (Ex. 17F, p. 17). The claimant also had an electromyogram (EMG) test in April 2017 that confirmed bilateral L5-S1 radiculopathy (Ex. 27F, p. 6).

In terms of the claimant's alleged CTS, the record shows the claimant had an EMG study in May 2012 that showed moderate to severe right CTS but no evidence of active denervation (Ex. 21F, p. 63). However, he denied ever receiving treatment for his CTS when he met with Dr. Dake (Ex. 5F). Similarly, the claimant's recent April 2017 EMG study showed bilateral CTS (Ex. 27F, p. 1). However, the claimant testified that he has not received any specific treatment for these impairments beyond his general medication management for his many reported pains (Hearing Testimony).

The medical record also shows the claimant has a long history of diabetes mellitus. In June 2013, his hemoglobin A1C level was slightly elevated at 7.9% (Ex. 3F, p. 14). However, by September 2014 his A1C level had climbed to 11.2% (Ex. 3F, p. 79). As noted above, the claimant reported a history of intermittent treatment and poor compliance when he met with Dr. Dake (Ex. 5F). In March 2016, he had another blood test that showed his A1C level remained elevated at 11.1% (Ex. 16F, p. 11). The following month the claimant's doctor noted that he was in a state of denial regarding his diabetes. The claimant had not yet attended the recommended diabetes management classes and he was resistant to treatment (Ex. 16F, pp. 1-3). Additional treatment records show the claimant had fair compliance with his treatment in October 2016 (Ex. 17F, p. 15). However, the April 2017 EMG study

also confirmed bilateral sural sensory neuropathy, consistent with diabetic peripheral neuropathy (Ex. 27F, p. 6).

Furthermore, the claimant suffers from obesity. He reported a height of 5'7" and a weight of 237 pounds when he applied for disability benefits (Ex. 2E, p. 2). This height and weight combination gives the claimant a body mass index (BMI) of 37, which is classified as obese. Although obese, Dr. Dake noted that this condition does not result in any dyspnea or fatigue and does not interfere with the claimant's ability to stand, walk, or perform activities of daily living (Ex. 5F, p. 3).

(Tr. 16-17).

### III. CONCLUSIONS OF LAW

### A. Standard of Review

Review of the Commissioner's disability decision is narrowly limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the right legal standards in reaching the decision. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Commissioner's decision must be affirmed if it is supported by substantial evidence,

"'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citations omitted). However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller,* 811 F.3d at 833 (citation and internal quotation marks omitted).

## B. Administrative Proceedings

The claimant has the ultimate burden of establishing his entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Commissioner applies a five-step inquiry to determine whether an individual is disabled within the meaning of the Social Security Act, as described by the Sixth Circuit as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings; (2) a claimant who does not have a severe impairment will not be found to be disabled; (3) a finding of disability will be made

without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four; (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and (5) if a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations his impairments cause and the fact that he cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . .'" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The Social Security Administration can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). The grids otherwise only function as a guide to the disability determination. *Wright*, 321 F.3d at 615-16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert ("VE")

testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Claims of Error

**1. The ALJ erred in rejecting the medical assessment of Mr. Trobaugh's treating physician, Dr. P. K. Jain.**

Plaintiff argues that the ALJ improperly gave "little weight" to the opinion of Dr. P. K. Jain, Plaintiff's treating physician. (Docket Entry No. 17, at 20). Plaintiff argues that in giving Dr. Jain's opinion little weight the ALJ improperly relied on older medical records and that, with respect to the ALJ's finding that Jain's opinion was inconsistent with Dr. Dake's opinion, the ALJ failed to consider that Plaintiff "had significant testing and treatment by Dr. Jain and other medical providers" after Dr. Dake's 2015 opinion. *Id*. at 23. In response, Defendant contends that the ALJ properly considered Dr. Jain's supervising physician relationship with Plaintiff and found it entitled to little weight and that the ALJ considered later medical treatment in determining Plaintiff's RFC. (Docket Entry No. 18, at 8-9).[3]

Social Security regulations address three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. §§ 404. 1527, 416.927;

---

[3]Plaintiff does not challenge the ALJ's evaluation of Plaintiff's mental impairments. Therefore, the Magistrate Judge only addresses the contention briefed by Plaintiff.

20 C.F.R. §§ 404.1502, 416.902.[4, 5]   A treating source has a history of medical treatment and an ongoing treatment relationship with the plaintiff consistent with accepted medical practice.  *Id*. §§ 404.1527, 416.927.  An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship.  *Id*.  A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records.  *Id*.  The opinion of an examining non-treating source is given greater weight than that from a non-examining source, and an opinion from a treating source is afforded greater weight than an examining non-treating source.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)).  "[W]hen the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist."  *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

---

[4]The Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Part 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Part 416 of the regulations) are substantially identical.  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (noting that the Title II and the Title XVI definition of "disability" is "verbatim the same" and explaining that "[f]or simplicity sake, we will refer only to the Title II provisions, but our analysis applies equally to Title XVI.").  The Magistrate Judge cites to the regulations interchangeably.

[5]On January 18, 2017, the Social Security Agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017).  *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844).  These final rules became effective March 27, 2017, 20 C.F.R. §§ 404.1527 & 416.927, setting forth the rules for evaluating opinion evidence, both medical and nonmedical, for claims filed before that date.  Thus, the Magistrate Judge applies these regulations, as well as any other regulations, in effect at the time of Plaintiff's filings on May 20, 2015.  *See* 20 C.F.R. §§ 404.614, 416.325 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee).

"A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data." *Jones*, 336 F.3d at 477 (citation omitted). Thus, "[i]f the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Id.* The ALJ must give treating-source opinions "'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not accord the treating physician's opinion "controlling weight," then the ALJ must weigh the opinion based on a number of factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. "However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing SSR 96-2p, 1996 WL 374188, at *4). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017). Moreover, the ALJ is not required to reiterate the prior paragraphs in the ALJ's decision in support of each conclusion made by the ALJ. *See Crum v. Comm'r of Soc. Sec.*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) ("Elsewhere

in her decision, the ALJ laid out in detail the treatment records that showed that Crum could return to normal work activity. . . . No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley*, 581 F.3d at 406-07 (quoting SSR 96-2p, 1996 WL 374188, at *5). The Sixth Circuit has explained that "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243. Failure to comply with the "good reasons" requirement, however, may be deemed harmless error. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). "If an ALJ rejects a treating physician's opinion but gives no reasons for doing so, it is difficult for a reviewing court to conduct its own analysis and make a judgment as to what the ALJ's reasons would have been-unless . . . the treating physician's opinion is 'so patently deficient that the Commissioner could not possibly credit it.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009)) (quoting *Wilson*, 378 F.3d at 547); *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 423 (6th Cir. 2013).

On March 16, 2017, Dr. Jain completed a medical source statement ("MSS") and opined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently; could stand and walk for less than two hours in an eight-hour workday; and sit for about four hours in an eight-hour workday. (Tr. 21, 855). Pushing and pulling was limited in the upper and lower extremities due to limited range of motion in the right shoulder, and Plaintiff had difficulty walking, bending over and sitting due to back pain. (Tr. 856). Plaintiff would need to alternate sitting and standing to relieve pain or discomfort. (Tr. 856). As to the medical findings supporting this conclusion, Dr. Jain cited Plaintiff's rotator cuff injury, as well as carpal tunnel syndrome of the right hand, and degenerative disc disease of the lumbar spine that caused severe pain to radiate to both legs and feet and in which sometimes Plaintiff could not feel his lower extremities. (Tr. 856). According to Dr. Jain, Plaintiff would constantly experience pain severe enough to interfere with attention and concentration, would be incapable of even low-stress jobs, would need unscheduled rest breaks every 15 to 20 minutes and then rest for 1 to 2 hours before returning to work, and would be expected absent more than four times per month. (Tr. 21, 856). Plaintiff could frequently reach, handle, finger and feel, and could occasionally climb, balance, kneel, crouch, and crawl. (Tr. 857). Environmental restrictions included avoiding even moderate exposure to extreme cold and heat; noise; dust; vibration; hazards (machinery, heights, . . .); fumes, odors, dust, gases; perfumes, solvents/cleaners; soldering fluxes; cigarette smoke; and chemicals; and avoiding concentrated exposure to humidity and wetness. (Tr. 858). The VE testified that there would be no work available for Plaintiff considering these restrictions. (Tr. 65).

Plaintiff argues that the ALJ's finding does not take into consideration the fact that after Dr. Dake's July 25, 2015 opinion, Plaintiff had significant testing and treatment by Dr. Jain and other

medical providers. (Docket Entry No. 17, at 23). Particularly, Plaintiff argues that Dr. Dake "did not have the benefit of the later MRI and CT studies nor did he have the 2017 EMG studies." *Id*. at 24. Defendant contends that Dr. Jain should not be considered a treating physician, citing Dr. Jain's supervising relationship with Plaintiff and that Dr. Jain never examined Plaintiff. (Docket Entry No. 18, at 8). Defendant further contends that whether or not Dr. Jain is a treating physician, the ALJ properly weighed the opinion and found it entitled to little weight. *Id*.

"There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citation omitted); *Schwer v. Comm'r of Soc. Sec.*, No. 1:16-CV-1110, 2017 WL 6375797, at *10 (S.D. Ohio Dec. 13, 2017), *report and recommendation adopted*, No. 1:16CV 1110, 2018 WL 401517 (S.D. Ohio Jan. 12, 2018). "The ALJ may, nonetheless, afford weight to the opinions of those non-treating physicians who have not reviewed the entire record, but 'the ALJ must give some indication that he [or she] at least considered' that the source did not review the entire record[,]' i.e., 'the record must give some indication that the ALJ subjected such an opinion to scrutiny.'" *Powers v. Comm'r of Soc*. Sec., 356 F. Supp. 3d 695, 703 (S.D. Ohio 2018) (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (citation and internal quotation marks omitted) (brackets in original)).

The Sixth Circuit "'has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (citation omitted); *accord Curler v. Comm'r of Soc. Sec.*, 561 F.

App'x 464, 472 (6th Cir. 2014); *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source

presents relevant evidence to support a medical opinion, particularly medical signs and laboratory

findings, the more weight [the Commissioner] will give that medical opinion. The better an

explanation a source provides for a medical opinion, the more weight [the Commissioner] will give

that medical opinion."). Here, whether or not Jain is considered a treating physician, the ALJ

sufficiently gave good reasons for discounting Dr. Jain's opinion as Dr. Jain's limitations were not

only inconsistent with his own medical findings but also with the medical record cited and

thoroughly discussed by the ALJ as well. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460,

462 (6th Cir. 2013) (substantial evidence supported ALJ's decision to accord minimal weight to

treating physician's opinion where the physician's "treatment notes did not demonstrate a basis for

concluding that [plaintiff] had marked to extreme limitations in numerous areas of work-related

mental functioning," and where the treating physician's "conclusions were contradicted by other

evidence in the record").

It is the function of the ALJ to resolve the conflicts between the medical opinions. *Justice*

*v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency

decides who wins. The fact that [the claimant] now disagrees with the ALJ's decision does not mean

that the decision is unsupported by substantial evidence."). "The Social Security Act instructs that

the ALJ--not a physician--ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc.*

*Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x

574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity

to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner.");

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) ("Although the ALJ may

consider statements by medical experts regarding how a particular symptom affects the claimant, such statements are neither required nor dispositive of the ultimate issue of disability. Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work.") (citations omitted). "[T]he ALJ is charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x at 728. Therefore, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*, 391 F. App'x at 439. The RFC does not need to be based on a particular medical opinion. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Nor does the RFC need to correspond to a physician's opinion because the Commissioner has the final authority to make determinations or decisions on disability. *Rudd*, 531 F. App'x at 728.

Here, the ALJ provided a thorough summary of the medical records pre-dating and post-dating Dr. Dake's opinion. In determining Plaintiff's RFC, the ALJ stated that the assessment was supported by the medical evidence of record, the medical opinions, and Plaintiff's testimony at the hearing. (Tr. 22). In examining the opinion evidence, the ALJ determined that Dr. Jain's opinion should be given little weight, stating:

> Although a treating source, Dr. Jain is only a supervising physician and does not regularly meet with the claimant. Dr. Jain also only started treating the claimant in September 2016 (Ex. 14F). Dr. Jain's opinion is grossly inconsistent with the examination findings of Dr. Dake (Ex. 5F). Dr. Jain's opinion is also inconsistent with his own treatment notes, which show grossly normal physical examination findings (Ex. 14F, pp. 6-8). Consequently, the undersigned gives little weight to the opinion of Dr. Jain.

(Tr. 21).

Finding that Dr. Jain's opinion was inconsistent with his own treatment notes, the ALJ cited that in September 2016, when Plaintiff began treatment with Dr. Jain, Dr. Jain noted only "minor complaints" of diffuse joint pain but found no tenderness, with normal range of motion, motor strength, sensation, and gait. (Tr. 17, 21, 521-23). Plaintiff's musculoskeletal examination showed "General Movements-Full range of motion in all joints. Joints and Muscles-Normal joints and muscles." (Tr. 522). The ALJ further cited Dr. Jain's records that showed that a November 2016 CT scan of Plaintiff's lumbar spine that showed only mild degeneration. (Tr. 17, 585). The ALJ also specifically noted that Dr. Jain's records showing that Plaintiff had an EMG test in April 2017 that confirmed bilateral L5-S1 radiculopathy. (Tr. 17, 1090).

As noted by the ALJ, Dr. Dake's July 2015 examination showed that Plaintiff had good blood pressure, normal cardiovascular findings, and he admitted he had not taken his diabetes medication for several months. (Tr. 16, 439-41). Dr. Dake noted that Plaintiff reported using a self-prescribed walker from time-to-time, but that Plaintiff did not have it with him on the day of the examination and Dr. Dake did not see any indication for Plaintiff to use a walker that day. (Tr. 19, 440). Dr. Dake found that Plaintiff's obesity had no effect on his ability to stand or walk; had limited range of motion in his right shoulder but otherwise full range of motion in all extremities; was missing reflexes but had a normal gait; his sensation was normal; and he had 5/5 motor strength throughout. (Tr. 16, 440-41). The ALJ noted that Plaintiff reported that he had carpal tunnel syndrome ("CTS"), but that he had not had any treatment for it. (Tr. 17, 439). Dr. Dake's examination showed that Plaintiff had full range of motion in his hands; 5/5 grip strength; no thenar atrophy;[6] Phalen's was

---

[6]Carpal tunnel syndrome (CTS) is characterized by classic symptoms of paresthesias in the median distribution and weakness that is sometimes accompanied by thenar atrophy. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4020621/ (last viewed September 12, 2019)

negative; and Tinel's sign[7] was negative bilaterally. (Tr. 441). Based upon his examination findings, Dr. Dake opined that Plaintiff "has ability to lift up to 30 lbs. occasionally and carry up to 30 lbs. occasionally. This limitation is because of issue with his right shoulder. He has ability to sit continuous1y. He has ability to stand frequently with breaks and to walk frequently with breaks." (Tr. 20, 438, 441).

In assigning great weigh to Dr. Dake's opinion, the ALJ noted that Dr. Dake was an independent consultant and an examining source, whereas Dr. Jain was only a supervising physician and did not meet regularly with Plaintiff. (Tr. 20, 21). Plaintiff was not examined by Dr. Jain, and Plaintiff testified that the only time that he saw Dr. Jain was when Dr. Jain completed the MSS. (Tr. 42). Plaintiff went to Dr. Jain's treating office from September 9, 2016 to January 11, 2017. (Tr. 516-23, 569-586). The ALJ found that Dr. Dake's opinion was consistent with his own examination findings. (Tr. 20). In assessing Dr. Dake's opinion, the ALJ considered Plaintiff's radiographic imaging and diagnostic testing, subsequent to Dr. Dake's opinion, conducted in January 2016 and April 2017, respectively. (Tr. 20, 513-15, 1085-1105). The Imaging from January 2016 showed "Degenerative disc disease at L3-4, L4-5 with central protruding of the intervertebral disc at L4-5 and mild to moderate spinal stenosis at the L4-5 level. The paraspinous muscles appear normal." (Tr. 17, 513). Dr. Khan Li, a neurosurgeon, noted some lumbar tenderness and decreased range of

---

[7]Phalen's, also known as the wrist-flexion test, is a test used to determine if a person has carpal tunnel syndrome. The test is described as follows: "The doctor will tell you to press the backs of your hands and fingers together with your wrists flexed and your fingers pointed down. You'll stay that way for 1-2 minutes. If your fingers tingle or get numb, you have carpal tunnel syndrome." Tinel's Sign is a test in which a doctor will tap or press on the median nerve in the wrist with a reflex hammer and if a patient's fingers tingle or if the patient feels an electric-shock-like sensation, the test is positive and the patient may have carpal tunnel syndrome. https://www.webmd.com/pain-management/carpal-tunnel/carpal-tunnel-diagnosis#1 (last viewed September 12, 2019)

motion, but also found Plaintiff had normal sensation, negative straight leg raising, and 5/5 motor strength throughout. (Tr. 17, 859-60). The ALJ noted that Dr. Li concluded that the radiographic imaging did not correlate to Plaintiff's subjective reports of pain, and that Dr. Li declined to recommend surgery and instead urged weight loss through diet and exercise. (Tr. 17, 860). The ALJ also specifically considered Plaintiff's April 2017 EMG study that showed bilateral CTS, but noted that Plaintiff testified that he had not received any specific treatment for these impairments beyond his general medication management. (Tr. 17, 54, 1085).

The ALJ also gave "great weight" to the opinions of the State agency medical consultants, Bill F. Payne, M.D., and Peter Arrowsmith, M.D., finding that they were consistent with the examination findings of Dr. Dake. (Tr. 20). The ALJ additionally found that the opinions of Drs. Payne and Arrowsmith were also consistent with Plaintiff's radiographic imaging and diagnostic testing, as well. (Tr. 20). "'State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation,' and whose findings and opinions the ALJ 'must consider . . . as opinion evidence.'" *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 712 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(e)(2)(i)).

The ALJ further gave partial weight to the opinion of Dr. W. Blake Garside, Jr., an orthopedic surgeon and a treating source, who gave Plaintiff a permanent lifting restriction of 35 pounds and 15 pounds overhead. (Tr. 21, 431). The ALJ noted that Dr. Garside's opinion was consistent with Dr. Dake's examination findings and with his own treatment notes. (Tr. 431).

Further, the ALJ cited that the record showed that Plaintiff received only conservative treatment for his impairments. *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir.

Oct. 2, 2013) (stating that a "conservative treatment approach suggests the absence of a disabling condition"). The ALJ noted that Plaintiff's therapist noted that Plaintiff's rehabilitation and discharge potential had an excellent prognosis and that the only additional back pain treatment that Plaintiff received was conservative medication management. (Tr. 16, 817). Plaintiff testified that he has not required any epidural steroid injections, emergency room visits, or surgical intervention. (Tr. 16, 19, 45). Instead, Plaintiff relied on over-the-counter medications through March 2016. (Tr. 559). Although Plaintiff attributed this lack of treatment to financial difficulties, (Tr. 16, 44), Plaintiff did not show that he sought free or low-cost treatment options or that he was denied medical treatment due to an inability to pay. *Moore v. Comm'r of Soc. Sec.*, No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) ("Plaintiff argues that his lack of treatment is because he did not have medical insurance. However, there is no evidence that he ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay."); *Brown v. Comm'r of Soc. Sec.*, No. 4:12-CV-80, 2014 WL 835193, at *12 (E.D. Tenn. Mar. 014).

The ALJ further noted Plaintiff's noncompliance with treatment and medication. (Tr. 16, 17). Plaintiff attempted a few sessions of physical therapy, but was discharged due to non-compliance. (Tr. 16, 434). The ALJ also noted that in March 2016, Plaintiff admitted that he was not taking his medication. (Tr. 17, 559). The ALJ further noted that Plaintiff had a history of intermittent treatment and poor compliance when he met with Dr. Dake. (Tr. 17). Dr. Dake noted that he suggested to Plaintiff "that he go to the Putnam County Health Department on Monday morning regarding his type 2 diabetes," and that Plaintiff "realizes that this is his responsibility not of the DDS or this physician." (Tr. 441). Moreover, the ALJ noted that in April 2016, Plaintiff's doctor noted that Plaintiff was in a state of denial regarding his diabetes and that Plaintiff had not

yet attended the recommended diabetes management classes and he was resistant to treatment." (Tr. 17, 554-56). *See Popp v. Comm'r of Soc. Sec. Admin.*, No. 2:15-CV-2977, 2017 WL 73943, at *6 (S.D. Ohio Jan. 9, 2017), *report and recommendation adopted sub nom. Popp v. Colvin*, No. 2:15-CV-2977, 2017 WL 815101 (S.D. Ohio Mar. 2, 2017) (an ALJ may rely on noncompliance as a factor when determining disability); *Robertson v. Colvin*, No. 4:14-CV-35, 2015 WL 5022145, at *6 (E.D. Tenn. Aug. 24, 2015); *Ranellucci v. Astrue*, No. 3:11-cv-00640, 2012 WL 4484922, *10 (M.D. Tenn. Sept. 27, 2012).

Accordingly, based upon the reasons discussed above, the Magistrate Judge concludes that the ALJ's is supported by substantial evidence and that this claim is without merit.

## 2. The ALJ failed to ask the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p.

Plaintiff essentially argues that Defendant cannot meet its burden under step 5 because the VE's testimony conflicts with the *Dictionary of Occupational Titles* ("DOT") as to the three jobs the Agency concluded that Plaintiff could perform and that the ALJ did not attempt to obtain any explanation for this conflict. (Docket Entry No. 17, at 24). Specifically, Plaintiff contends that the jobs of housecleaner, mail sorter and inspector, all require frequent reaching, while the hypothetical posed to the VE and the RFC included limitations to "occasional" reaching with the right upper extremity. *Id*. Plaintiff therefore asserts that "[b]ecause the ALJ's hypothetical included a limitation that precluded more than occasional reaching with the right upper extremity, the ALJ cannot rely on the vocational expert's testimony to support her conclusion that [Plaintiff] retains the ability to perform work which exists in significant numbers in the national economy without resolving the apparent conflict." *Id*. at 24-25.

SSR 00-4p provides, in relevant part, the following:

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

2000 WL 1898704, at *4 (S.S.A. December 4, 2000). An ALJ's duty is satisfied "if he or she asks the VE whether his or her testimony is consistent with the DOT." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir.2006)).

An ALJ complies with SSR 00-4p when the ALJ asks the VE if there are any discrepancies between the ALJ's opinions and the DOT standards even if the VE did not disclose a conflict. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). "[T]he ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. This obligation falls to the plaintiff's counsel, who ha[s] the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (citation omitted). A plaintiff's counsel's failure to do so is not grounds for relief. *Id*. at 168-69.

At the hearing, the ALJ asked the VE to identify jobs that Plaintiff could perform with the work-related limitations supported by the evidence that included "no more than occasional reaching

with the right upper extremity." (Tr. 64). The VE identified the occupations of cleaner (DICOT 323.687-014, 1991 WL 672783), mail sorter (DICOT 209.687-026, 1991 WL 671813), and inspector (DICOT 559.687-074, 1991 WL 683797). (Tr. 65). The ALJ failed to question the VE whether the VE's testimony was consistent with the DOT.

Defendant contends that the DOT does not state that reaching must be performed bilaterally, and that the ALJ found that Plaintiff had no limitations in reaching with his left arm. (Docket Entry No. 18, at 13). However, as noted by the district court in *Swearengin v. Berryhill*, No. 3:17-CV-32-DCP, 2018 WL 5045216 (E.D. Tenn. Oct. 17, 2018) "[a] review of other Social Security disability cases nationwide reveals conflicting approaches as to whether a conflict exists between a DOT job description requiring frequent reaching, and a VE's testimony that a claimant limited in only one extremity could perform the listed job." *Id*. at *12 (collecting cases). Noting that other courts presented "have refused to discern a conflict between the requirement of frequent reaching and a vocational expert's testimony that a person restricted in one extremity could perform the job," the *Swearengin* court concluded, "'because at best it is unclear whether the [listed job positions] require[ ] frequent bilateral reaching,' the Court finds that an apparent conflict exists between the VE's testimony and the information provided in the DOT description." *Id*. at *13. (citing *Snyder v. Comm'r of Soc. Sec.*, No. 17-12147, 2018 WL 4016971, at *6 (E.D. Mich. July 24, 2018), *report and recommendation adopted by*, 2018 WL 4005777 (E.D. Mich. Aug. 22, 2018); *Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015); *Bobo v. Berryhill*, 2017 WL 7051997, at *23 (N.D. Ohio Sept. 21, 2017), *report and recommendation adopted by*, 2018 WL 562933 (N.D. Ohio Jan. 24, 2018)).[8]

_____

[8]Im *Bobo*, the district court noted:

Indeed, as another court within this District recently explained:

Based upon the authority cited, the Magistrate Judge concludes that the ALJ failed to satisfy

the ALJ's affirmative responsibility under SSR 00-4p to ask the VE regarding possible conflicts

---

Most courts analyzing this issue have found a potential or apparent conflict between a DOT job description requiring frequent reaching and a claimant's limitation of no overhead reaching or occasional reaching with one arm. *See Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) (remanding case due, in part, to apparent conflict between VE testimony and DOT-DOT listed three jobs as requiring frequent reaching but ALJ found that claimant could only occasionally reach upward with nondominant arm); *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (remanding the case due to the potential inconsistency between a limitation that claimant could only "occasionally reach above shoulder level" with the DOT requirement that the cashier's job required frequent reaching); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (finding a conflict between DOT job listing requiring constant reaching and RFC limitation that claimant could reach overhead only occasionally); *Jones v. Colvin*, No. 4:15–CV–00072–F, 2016 WL 4491764, at *2 (E.D.N.C. Aug. 26, 2016) (found conflict between RFC restriction of no overhead reaching with left arm and DOT requirement that housekeeping job includes frequent reaching); *Marquez v. Astrue*, No. CV–11–339–TUC–JGZ–DT, 2012 WL 3011778, at *3 (D. Ariz. May 2, 2012), *report and recommendation adopted*, No. CV 11–339–TUC–JGZ, 2012 WL 3011779 (D. Ariz. July 23, 2012) (finding a conflict between VE testimony that claimant limited in overhead reaching can perform particular jobs requiring frequent reaching in any direction.); *Jordan v. Astrue*, No. 09–CV1559–MMA, 2010 WL 2816234 (S.D.Cal. May 4, 2010) (finding conflict between VE testimony, that claimant limited to occasional overhead reaching with right shoulder could perform particular jobs, and DOT descriptions that jobs required frequent reaching); *Silvera v. Astrue*, No. CV–09–1935–JC, 2010 WL 3001619 (C.D.Cal. July 29, 2010) (finding that frequent reaching requirement in the DOT description potentially conflicts with claimant's restriction to perform only occasional overhead reaching because DOT does not distinguish overhead from other reaching); *Robertson v. Astrue*, No. 1:09CV87–SRW, 2010 WL 3488637, at *3 (M.D. Ala. Aug. 31, 2010); *Beeler v. Astrue*, No. 2:09–CV–649–GZS, 2010 WL 4791836, at *4 (D. Me. Nov. 17, 2010), *aff'd*, No. 09–CV–649–P–S, 2010 WL 5070889 (D. Me. Dec. 7, 2010) (DOT jobs requiring occasional reaching were inconsistent with a limitation of no overhead work with right arm) ...

*Bennett v. Comm'r of Soc. Sec.*, No. 1:16-CV-227, 2016 WL 7395795, at *6 (N.D. Ohio Dec. 2, 2016), *report and recommendation adopted*, No. 1:16CV227, 2016 WL 7396707 (N.D. Ohio Dec. 21, 2016).

*Bobo*, 2017 WL 7051997, at *21-22.

between the VE's testimony and the DOT, and in doing so, failed to resolve any potential conflicts. Accordingly, because the ALJ did not make the inquiry required by SSR 00–4p, and because the error is not harmless, the Magistrate Judge recommends that this action be remanded for further proceedings on this issue.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16) be **GRANTED**, and the Commissioner's decision be **REVERSED and REMANDED** for further administrative proceedings consistent with this Report and Recommendation. The parties have fourteen (14) days of being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 13th day of September, 2019.


/s/      Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge

25